**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**CHRISTINE THERIOT**                                    **CIVIL ACTION**

**VERSUS**                                              **NO. 13-0453-SM-SS**

**CAROLYN W. COLVIN, ACTING**
**COMMISSIONER OF THE SOCIAL**
**SECURITY ADMINISTRATION**

<u>**REPORT AND RECOMMENDATION**</u>

The plaintiff, Christine Theriot ("Theriot"), seeks judicial review, pursuant to Section 405(g) of the Social Security Act (the "Act"), of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for supplemental security income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 1382(a)(3).

<u>**PROCEDURAL HISTORY**</u>

A prior claim was denied by the Appeals Council on May 28, 2004.  There is no record of an appeal to federal court of that claim.  R. 256.

On October 24, 2008, Theriot submitted an application for SSI.  She reported that her alleged disability began on May 1, 2008.  R. 225-28.  She reported problems sitting, standing, bending, twisting and picking up things.  She had lost 50% of the hearing in each ear.  She took medication for depression.  She used an inhaler for asthma.  R. 260.

On February 19, 2009, the state agency determined that Theriot was not disabled.  R. 84. On July 13, 2009, there was a hearing before an Administrative Law Judge ("ALJ").  R. 67. Theriot was represented by counsel.  A vocational expert testified.  R. 78-82.  On August 28, 2009, there was an unfavorable decision.  R. 89-99.  The ALJ found that considering Theriot's

residual functional capacity ("RFC"), there were jobs that she could perform. R. 97. On July 30, 2010, the Appeals Council remanded the case. It noted that the ALJ's hypothetical question to the vocational expert was not identical to the RFC found and therefore, it was not clear whether there were jobs that existed in significant numbers that Theriot could perform. R. 101.

On March 23, 2011, the ALJ held a second hearing. R. 43. Theriot was represented by counsel. The ALJ determined not to proceed with the hearing because the file was incomplete. R. 59-60. On June 8, 2011, there was a third hearing. Theriot was represented by counsel. A vocational expert testified. R. 26-42. On September 14, 2011, the ALJ issued an unfavorable decision. R. 9-20. On January 9, 2013, the Appeals Council denied the request for review. R. 1-3.

On March 8, 2013, Theriot filed a complaint. Rec doc. 1. On January 7, 2014, Theriot filed proof of service of the summons and complaint. Rec. doc. 22. Theriot filed a motion for summary judgment before the Commissioner filed an answer. Rec. doc. 5. The Commissioner filed an answer and the administrative record. Rec. docs. 26 and 27. The parties filed cross-motions for summary judgment. Rec. docs. 29 and 31.

## STATEMENT OF ISSUES ON APPEAL

Whether the ALJ complied with the Appeals Council's July 30, 2010 order of remand?

## THE COMMISSIONER'S FINDINGS

In the September 14, 2011 decision, the ALJ made the following findings:

1. Theriot has not engaged in substantial gainful activity since August 7, 2008, the application date (20 C.F.R. 416.971 *et seq*.).

2. Theriot has the following severe impairments: hearing loss, musculoskeletal pain and dysthymia (20 C.F.R. 416.920(c)).

3.   Theriot does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d), 416.925 and 416.926).

4.   Theriot has the RFC to perform light work as defined in 20 C.F.R. 416.967(b).  Theriot is a younger individual with a high school education who is able to read, write, add, and subtract, and who from an exertional standpoint is able to perform work at the sedentary and light levels.  She can work only rarely around dust, fumes and gases or around heat and humidity where the temperature would be above 85 degrees.  She could not work continuously outside.  She has slight limitations in interacting with the general public; slight to moderate limitations in her ability to maintain attention and concentration for extended periods; and slight to moderate limitations in her ability to complete work tasks in a normal work day at a consistent pace.  She is able to use short term memory and is able to understand, remember and carry out simple instructions, and to engage in one/two-step process.

5.   Theriot has no past relevant work (20 C.F.R. 416.965).

6.   Theriot was born in 1980 and was 27 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 C.F.R. 416.963).

7.   Theriot has at least a high school education and is able to communicate in English (20 C.F.R. 416.964).

8.   Transferability of job skills is not an issue because Theriot does not have past relevant work (20 C.F.R. 416.968).

9.   Considering Theriot's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Theriot can perform (20 C.F.R. 416.969 and 416.969(a)).

10.  Theriot has not been under a disability, as defined in the Act, since August 7, 2008, the date the application was filed (20 C.F.R. 416.920(g)).

R. 12-21 (emphasis added).

## <u>ANALYSIS</u>

a.   **<u>Standard of Review.</u>**

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the

evidence.  Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005); Newton v. Apfel, 209 F.3d 448,

452 (5th Cir. 2000).  Substantial evidence is more than a scintilla but less than a preponderance

and is such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.  Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971); Perez, 415

F.3d at 461.  Alternatively, substantial evidence may be described as that quantum of relevant

evidence that a reasonable mind might accept as adequate to support a conclusion.  Carey v.

Apfel, 230 F.3d 131, 135 (5th Cir. 2000).  This court may not re-weigh the evidence, try the

issues de novo or substitute its judgment for the Commissioner's.  Perez, 415 F.3d at 461; Selders

v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990).

The administrative law judge is entitled to make any finding that is supported by

substantial evidence, regardless of whether other conclusions are also permissible.  See Arkansas

v. Oklahoma, 503 U.S. 91, 113, 112 S.Ct. 1046, 1060 (1992).  Despite this court's limited

function, it must scrutinize the record in its entirety to determine the reasonableness of the

decision reached and whether substantial evidence exists to support it.  Villa, 895 F.2d at 1022;

Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).  Any findings of fact by the

Commissioner that are supported by substantial evidence are conclusive.  Ripley v. Chater, 67

F.3d 552, 555 (5th Cir. 1995).

To be considered disabled and eligible for disability insurance benefits, plaintiff must

show that she is unable "to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve months."  42

U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Commissioner has promulgated regulations that

provide procedures for evaluating a claim and determining disability.  20 C.F.R. §§ 404.1501 to

404.1599 & appendices, §§ 416.901 to 416.998 (1997). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. Id. §§ 404.1520, 416.920; Perez v. Barnhart, 415 F.3d at 461; Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 514 U.S. 1120, 115 S. Ct. 1984 (1995).[1] The five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled. Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995).

The claimant has the burden of proof under the first four parts of the inquiry. Id. If she successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy, which the claimant is capable of performing. Greenspan, 38 F.3d at 236; Kraemer v. Sullivan, 885 F.2d 206, 208 (5th Cir. 1989). When the Commissioner shows that the claimant is capable of engaging in alternative employment, "the ultimate burden of persuasion shifts back to the claimant." Id.; accord Selders, 914 F.2d at 618. "In determining whether substantial evidence of disability

---

[1] The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled. Id. §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence. Id. §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated. If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled. Id. §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy. If the claimant cannot meet the demands, he or she will be found disabled. Id. §§ 404.1520(f)(1), 416.920(f)(1). To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled. Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 (1994) ("Medical-Vocational Guidelines").

5

exists, this court weighs four factors: (1) objective medical evidence; (2) diagnoses and opinions; (3) the claimant's subjective medical evidence of pain and disability; and (4) the claimant's age, education, and work history." <u>Perez v. Barnhart</u>, 415 F.3d at 462.  "The Commissioner, rather than the courts, must resolve conflicts in the evidence." <u>Martinez v. Chater</u>, 64 F.3d 172, 174 (5th Cir. 1995).

b.      **<u>Testimony at the July 13, 2009 Hearing</u>.**

Theriot was 28 at the time of the hearing.  R. 71.  She completed high school.  R. 71.  She could read, write, add and subtract.  R. 71.  She had a driver's license.  R. 71.  After completing high school, she worked as a dishwasher and cook at a family restaurant.  R. 71.  She also worked as a painter and at a gas station.  R. 71.  She was not working at the time of the hearing. R. 72.  She last worked for three to five years before the hearing.  R. 72.

Theriot lived on food stamps, child support for her daughter, who was four, and some help from her mother.  R. 72.  She and her daughter lived in a trailer on her mother's property. R. 72.  Her daughter was entering school that fall.  R. 72.

Theriot wore hearing aids in both ears from when she was 8 years old until she was 23. The hearing aids had broken and she could not afford to replace them.  R. 73.

Theriot could not work because she could not lift anything.  When she lifted her arms up too high they became numb.  Her legs gave out on her.  She did not go outside in the summer because of the heat.  Her asthma would act up.  She had to be able to lie down for a period of time.  R. 73.

Theriot took medication for pain relief, anxiety, panic attacks, and depression.  She took muscle relaxers and used an inhaler.  R. 74.  She was beaten in a domestic dispute four or five years earlier.  She suffered from back and neck problems.  R. 74.  A report by Dr. Broussard, an

orthopedist, indicates that she had disk ruptures at two levels in her neck.  R. 75.  Dr. Broussard restricted her activities.  R. 75.

In the morning Theriot fixed her daughter breakfast in a microwave, took her medication and then laid down.  R. 75-76.  Every day she would lie down for 2 to 4 hours.  R 76.  She drove if she had to go to the store.  When she drove, she did not take her medication until she returned home.  R. 76-77.  Her mother usually shopped for her.  R. 77.

Theriot had headaches every day.  R. 77.  She could not stand for more than 10 to 15 minutes.  R. 77.  She could not sit for more than 10 to 15 minutes without hurting.  R. 77.

c.     **Testimony at the March 23, 2011 Hearing.**

The ALJ noted that the remand sheet from the Appeals Council did not include the decision by the Appeals Council or the prior decision by the ALJ.  R. 45.  The ALJ reported that at a November 9, 2010 meeting with counsel for Theriot, it was determined that medical records were missing.  R. 47.  The ALJ also noted that the record did not include the transcript of the July 13, 2009 hearing, so he could not determine what question was posed to the vocational expert at that hearing.  R. 49.  Counsel for Theriot reported that there was additional treatment. R. 51-52.  The ALJ reviewed some of it with Theriot.  R. 53-59.  The ALJ reported that the hearing would be rescheduled to permit the record to be completed.  R. 60-61.

d.     **Testimony at the June 8, 2011 Hearing**.

Theriot testified that since the July 13, 2009 hearing, she had gone to the Omni Medical Clinic every two or three months.  R. 31.  The doctor at the clinic was her primary care doctor. R. 31.  In March 2011, she was diagnosed with bipolar disorder.  R. 31.  She took medication daily for the disorder.  R. 31.  She also took a muscle relaxer and pain pills.  R. 32.  She used an

inhaler for her breathing. R. 32. The medications made her sleepy and tired. R. 33. She also saw Dr. Haydel for her back and neck and pain management. R. 33.

Theriot's father drove her to the hearing. R. 34. She tried not to drive. R. 34.

Theriot had been on Seroquel since March of 2011. R. 34. The ALJ asked for any updated medical records since March 3, 2011. The ALJ was interested in seeing if there was any discussion about increased side effects from the medications. R. 34-35.

The ALJ noted that the remand order stated that the hypothetical question posed to the vocational expert was not identical to the RFC found. R. 38. It was unclear whether there were jobs that exist in significant numbers that Theriot could perform. R. 39. The ALJ commented that the Appeals Council was correct. A phrase was added in the decision that was not part of the hypothetical question posed to the expert. The phrase was **"[a]nd may be unable to complete work tasks in a normal work day at a consistent pace."** R. 39. (emphasis added).

e.   **Medical Evidence**.

Because of the limited issue raised by Theriot, the medical evidence is not summarized.

f.   **Plaintiff's Appeal.**

**Issue**. Whether the ALJ complied with the Appeals Council's July 30, 2010 order of remand?

At the July 13, 2009 hearing, the ALJ posed a hypothetical question to the vocational expert. R. 79-80. The ALJ said: "[w]e're dealing with a younger individual with a high school education who is able to read, write, and do simple arithmetic." R. 79.

> Limited to sedentary and light work from an exertional standpoint. The individual would not work any more frequently than what I would call rarely around dust fumes and gases, around either heat or humidity. I'm talking about excessive beyond, let's say, 85 degrees, and who would not work in positions that required work outside.

8

Also assume the individual has light limitations in their ability to maintain attention or concentration (persistence and pace), for extended periods and **slight limitations in their ability to complete work tasks in a normal workday at a consistent pace**.

R. 79-80 (emphasis added).   The expert responded that Theriot could perform work in the sedentary and light categories and there were jobs available.  R. 80-81.  If Theriot was required to take breaks of one to two hours in the morning and afternoon, none of the jobs would be available.  R. 81-82.

In the August 28, 2009 decision, the ALJ's fourth finding of fact was:

Theriot had the RFC to perform light work except she could rarely work around dust, fumes and gases or heat or humidity (above 85 degrees); no continuous outside work; had slightly reduced ability to interact with the general public, maintaining attention and concentration for extended periods of time, formulate plans and use appropriate judgment, utilize short term memory, understand, remember and carry out simple instructions, engage in one and two step process, accept instruction, direct supervision or respond appropriately to criticism; **and may be unable to complete work tasks in a normal workday at a consistent pace**.

R. 91-92 (emphasis added).   That finding was very different than the hypothetical which assumed "slight limitations" to complete work tasks in a normal workday.

In its July 30, 2010 order, the Appeals Council noted that the hypothetical question posed to the expert at the July 13, 2009 hearing was not identical to the RFC found in the August 28, 2009 decision.  R. 101.  On remand, the ALJ was instructed to:

1. "Further evaluate the claimant's mental impairments in accordance with the special technique described in 20 CFR 416.920a. . . ."

2. "Give further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations. . . ."

3. "Further, if necessary, obtain evidence from a medical expert to clarify the nature and severity of the claimant's impairments. . . ."

    4. "Obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base. . . .  The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. . . ."

R. 102.

    At the June 8, 2011 hearing, the ALJ posed a hypothetical question to the vocational expert. The expert was asked to assume that there was no past relevant work.  R. 39.

    [A]ssume, for purposes of this question, a younger individual with no prior work history, with a high school education, who is able to read, write, add, and subtract; who, from an exertional standpoint, is able to perform work at the sedentary and light levels.

    This is a person who could work only rarely around dusts, fumes, and gases, or around heat and humidity, where the temperature would be, roughly, above 85 degrees; a person who could not, therefore, work continuously outside; a person who has slight limitations in their ability to interact with the general public; a person who has slight to moderate limitations in their ability to maintain attention and concentration for extended periods; **slight to moderate limitations in their ability to complete work tasks and a normal work day at a consistent pace**.

    The individual is able to utilize short-term memory; is able to understand, remember, and carry out simple instructions; is able to engage in one-, two-step process; and, the only limits on those last things are the ones I stated earlier, about slight to moderate limitations in the area of maintaining attention and concentration and completing work tasks.

    Is there work available in the regional or national economy for such an individual?

R. 39-40 (emphasis added).  The expert responded that there were positions available.  R. 40-41.

    Theriot's counsel asked if the person was "[u]nable to complete work tasks in a normal work day at a consistent pace . . . the person . . . is not able to work the entire day because of their disabilities, would there be any jobs in the national economy?"  R. 41.  The expert responded there would be no jobs.  R. 41.

    The ALJ's hypothetical question at the June 8, 2011 hearing contains a limitation almost identical to the limitation found in the ALJ's hypothetical question at the July 13, 2009 hearing, but

10

in the September 14, 2011 decision, the ALJ's fourth finding of fact was consistent with the hypothetical:

> Theriot has the RFC to perform light work as defined in 20 C.F.R. 416.967(b). Theriot is a younger individual with a high school education who is able to read, write, add, and subtract, and who from an exertional standpoint is able to perform work at the sedentary and light levels. She can work only rarely around dust, fumes and gases or around heat and humidity where the temperature would be above 85 degrees. She could not work continuously outside. She has slight limitations in interacting with the general public; slight to moderate limitations in her ability to maintain attention and concentration for extended periods; and **slight to moderate limitations in her ability to complete work tasks in a normal work day at a consistent pace**. She is able to use short term memory and is able to understand, remember and carry out simple instructions, and to engage in one/two step process.

R. 13.

Theriot objects to the change in finding four in the September 14, 2011 decision contending that when her counsel asked the vocational expert at the June 8, 2011 hearing whether work was available if the limitation from finding four in the August 28, 2009 decision was used, the expert testified that no work was available. Theriot argues that when the ALJ made the change in finding four in the September 14, 2011, he violated the remand order.

The Commissioner responds that the Appeals Council's July 30, 2010 order of remand did not direct the ALJ to adopt the RFC in finding four from the August 28, 2009 decision. The Commissioner urges that the Appeals Council directed the ALJ to reevaluate Theriot's RFC and pose a hypothetical question to the vocational expert incorporating the limitations supported by the record. Rec. doc. 31 (Memorandum at 4).

The July 30, 2010 remand order did not specify the residual functional capacity the ALJ should adopt. The remand order directed the ALJ to give further consideration to Theriot's maximum residual functional capacity and provide rationale with specific references to evidence of record in support of assessed limitations. The remand order provided that the hypothetical question should reflect the specific capacity/limitations established by the record as a whole. R. 101. The

ALJ complied with the remand order.  The ALJ's action on remand was not inconsistent with the Appeals Council's remand notice.  20 C.F.R. § 416.1477.

Houston v. Sullivan, 895 F.2d 1012, 1015 (5th Cir. 1989), quoted with approval the following from Campbell v. Bowen, 822 F.2d 1518 (10th Cir. 1987):

> The regulations provide that the administrative law judge shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order.  The Appeals Council directed the ALJ to obtain testimony from a vocational expert as to the transferability of Campbell's skills to a range of work within the claimant's residual functional capacity.  The ALJ's redetermination of the residual functional capacity was not inconsistent with this order.  Nor did the order bind the ALJ to his earlier decision.  To hold otherwise would discourage administrative law judges from reviewing the record on remand, checking initial findings of fact, and making corrections, if appropriate.  We decline to constrain the ALJ in a manner not mandated by the regulations.

822 F.2d at 1522 (quotation marks and brackets omitted).

The ALJ's finding four in the September 14, 2011 decision did not violate the July 30, 2010 remand order.  On remand the ALJ corrected finding four of the August 28, 2009 decision. The ALJ commented that that a phrase was added in the August 28, 2009 decision that was not part of the hypothetical question posed to the expert at the July 13, 2009 hearing.  The ALJ was permitted to review the record on remand, check the initial findings of fact, and make corrections, if appropriate.  Campbell v. Brown, 822 F.2d at 1522.

## RECOMMENDATION

IT IS RECOMMENDED that:  (1) the Commissioner's motion for cross-motion for summary judgment (Rec. doc. 31) be GRANTED; and (2) Theriot's motions for summary judgment (Rec. docs. 5 and 29) be DENIED.

**OBJECTIONS**

A party's failure to file written objections to the proposed findings, conclusions and recommendations in a magistrate judge's report and recommendation within fourteen (14) calendar days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 28th day of October, 2014.

_____
**SALLY SHUSHAN**
**United States Magistrate Judge**